# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL BURNETT, ) | Case No.: 2:08-cv-01335-GMN-RJJ |
| ) | |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| ) | |
| TUFGUY PRODUCTIONS, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This case arises out of a spinal injury sustained by Plaintiff during an "ultimate fighting" show.  Pending before the Court is Defendants Tufguy Productions, Inc.'s ("Tufguy"), Ultimate Fighting Productions, LLC's ("UFP"), and Zuffa, LLC's d.b.a. Ultimate Fighting Productions ("Zuffa") Motion for Summary Judgment (ECF No. 87).  For the reasons given herein, the Court GRANTS the motion.

## I.    FACTS AND PROCEDURAL HISTORY

According to the Second Amended Complaint ("SAC"), on or about June 10, 2006, Plaintiff Michael Burnett participated in Tufguy's "Ultimate Fighter 4" television show. (ECF No. 27 ¶ 3).  As a result--presumably during a fight, although not explicitly so stated in the SAC--Plaintiff suffered a spinal injury. (*Id.*).  At that time, Plaintiff was insured under an accident and health insurance policy issued by Defendant National Union Fire Insurance Co. of Pittsburgh, PA ("NUFIC"), Policy No. 009109179 ("the Policy"). (*Id.* ¶ 7).[1]  Plaintiff alleges that although he has fulfilled all conditions precedent to NUFIC's performance under the Policy, NUFIC has failed to make a reasonable offer and payment under the Policy in connection with his injuries,

---

[1]The Court has granted a stipulation by the parties substituting "NUFIC" for "AIG" wherever the latter appears in the SAC and dismissing AIG as a party. (*See* ECF No. 49).

1    (*id.* ¶ 9), and that NUFIC, despite numerous requests, has failed to provide him with even a true

2    and correct copy of the Policy, (*id.* ¶ 10).

3         Plaintiff sued Tufguy and American International Group, Inc. ("AIG") in the District

4    Court of Clark County, Nevada. (*See* ECF No. 1, Ex. A).  AIG, which has since been dismissed

5    as a party, removed to this Court based on diversity jurisdiction. (*See* ECF No. 1).  Plaintiff is an

6    Oklahoma resident.  Tufguy is a California corporation.  AIG is a Delaware corporation with its

7    principal place of business in New York.  After removal, Plaintiff joined Zuffa as a Defendant.

8    Zuffa is a Nevada limited liability company with its principal place of business in Nevada. (ECF

9    No. 27 ¶ 1).  Plaintiff brings three causes of action: (1) Negligence (against Tufguy, Zuffa, and

10   UFP); (2) Breach of Contract (against NUFIC); and (3) Breach of the Covenant of Good Faith

11   and Fair Dealing (against NUFIC).  The Court has denied a motion to dismiss the SAC for lack

12   of prosecution.  After inviting blind briefs on the issue of improper removal, the Court declined

13   to remand.  Defendants Tufguy, Zuffa, and UFP now move for summary judgment on the sole

14   cause of action pled against them: negligence.

15   **II.    SUMMARY JUDGMENT STANDARDS**

16        The Federal Rules of Civil Procedure provide for summary adjudication when "the

17   pleadings, depositions, answers to interrogatories, and admissions on file, together with the

18   affidavits, if any, show that there is no genuine issue as to any material fact and that the party is

19   entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those that

20   may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

21   (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable

22   jury to return a verdict for the nonmoving party. *See id.*  Thus, "[s]ummary judgment is

23   inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could

24   return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d

25   1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir.

1   1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually

2   unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

3         In determining summary judgment, a court applies a burden-shifting analysis.  "When the

4   party moving for summary judgment would bear the burden of proof at trial, it must come

5   forward with evidence which would entitle it to a directed verdict if the evidence went

6   uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the

7   absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage*

8   *Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast,

9   when the nonmoving party bears the burden of proving the claim or defense, the moving party

10  can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the

11  nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a

12  showing sufficient to establish an element essential to that party's case on which that party will

13  bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party

14  fails to meet its initial burden, summary judgment must be denied and the court need not

15  consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

16  159–60 (1970).

17        If the moving party satisfies its initial burden, the burden then shifts to the opposing party

18  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

19  *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

20  opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

21  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

22  differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

23  F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party cannot avoid summary judgment

24  by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v.*

25  *List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions

and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.    ANALYSIS

A prima facie claim for negligence in Nevada, as elsewhere, consists of four elements: "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't LLC*, 180 P.3d 1172, 1175 (Nev. 2008).

Plaintiff alleges that "[o]n or about June 10, 2006 . . . as a direct and proximate result of Plaintiff's participation in the Ultimate Fighter 4 television series, Plaintiff suffered a spinal injury" because "[Defendants] carelessly, recklessly and negligently fail[ed] to provide a safe environment . . . ." (ECF No. 27 ¶¶ 3–4).  This is the entirety of the allegations concerning Defendants' alleged negligence.  It is unclear from the SAC how the injury is alleged to have occurred or what actions Defendants took or failed to take in violation of their alleged duty to ensure Plaintiff's safety.  Perhaps a referee who was an agent of one or more Defendants failed to stop a fight after Plaintiff had submitted under the rules or been knocked unconscious, but this appears unlikely, because Plaintiff has sued no opponent for battery for exceeding the scope of his consent.  Perhaps Plaintiff was injured by faulty equipment or dangerous property conditions at a fight venue, but this also appears unlikely, because Plaintiff has sued no manufacturer, retailer, or real property owner.  The negligence claim has remained somewhat mysterious for the almost two years that this claim has been pending.  The breach element of the negligence claim likely fails under *Twombly* and *Iqbal* for this reason alone, without further analysis,

because specific acts or admissions must be alleged to establish a prima facie case of negligence unless the instrument of harm is alleged to be under a defendant's exclusive control and the defendant is in a better position than the plaintiff to explain the cause of the accident, neither of which are alleged in the present case. *See Judson v. Camelot Food, Inc.*, 756 P.2d 1198, 1200–01 (Nev. 1988).

Defendants, however, move for summary judgment based purely on contractual waiver of liability.  They attach copies of three agreements: (1) Exclusive Promotional and Ancillary Rights Agreement ("the Zuffa Agreement"), (ECF No. 87, Ex. A); (2) Ultimate Fighter Applicant Agreement ("the Tufguy Agreement"), (*id.*, Ex. B); and (3) Ultimate Fighter Waiver and Release, Assumption of the Risk, and Indemnity Agreement ("the Waiver and Release"), (*id.*, Ex. C).  These agreements are adduced as attached to the declaration of William P. Volk, Esq., attorney for Defendants.  Defendants also attach a copy of Plaintiff's April 21, 2010 deposition, wherein Plaintiff admits he signed the first and third agreements on April 18, 2006 and April 25, 2006, respectively. (*Id.*, Ex. D, at 38:10–25, 64:2–19).  The deposition evidence is not sufficient to indicate an admission to having signed the second agreement, because the document is not sufficiently identified. (*See id.*, Ex. D, at 49:2–16).  In any case, all three of the agreements bear Plaintiff's signature, and they are dated April 18, April 25, and April 25, 2006, respectively. (*See id.*, Ex. A, at 20; *id.*, Ex. B, at 14; *id.*, Ex. C, at 12).

Article XVI of the Zuffa Agreement was clearly intended to release Zuffa and affiliated entities from liability arising out of injuries.  Section 16.1 notes: "Fighter fully understands and agrees that the professional sport of mixed martial arts is an inherently and abnormally dangerous activity . . . ." (*Id.*, Ex. A, at 15, art. XVI § 16.1).  The text continues:

> Fighter has knowingly evaluated the inherent risks, foreseen and unforeseen, in this dangerous sport and represents and declares that he is physically, mentally, emotionally and intellectually willing and able to accept, and does hereby clearly, unambiguously and explicitly accept, all risks, foreseen and unforeseen, associated with participating in the sport and the Bouts.

1   (*Id.*).  The next section indicates that Plaintiff "irrevocably agrees that the Releasing Parties will

2   not sue or claim against Zuffa [and affiliated entities, agents, assigns, etc.] . . . . for any injury,

3   illness, damage, or harm to Fighter . . . ." (*Id.*, Ex. A, at 15, art. XVI § 16.2).  The consideration

4   for this release was the opportunity to participate in the matches. (*See id.*, Ex. A, at 15, art. XVI

5   § 16.3).  The Zuffa Agreement releases Zuffa from liability for the negligence claim.

6          Next, the Tufguy Agreement was clearly intended to release all released parties from

7   liability arising out of injuries. (*See id.*, Ex. B, at 10–11, §§ 26–30a).  Released parties include

8   the "Producers," (*id.*, Ex. B, at 10, § 27), which are defined as Tufguy and UFP, (*id.*, Ex. B, at 1).

9   Paragraph 28 of the Tufguy Agreement contains the same language as section 16.1 of article XVI

10  of the Zuffa Agreement does, acknowledging the inherent and abnormal risks involved in mixed

11  martial arts fighting and accepting them. (*See id.*, Ex. B, at 10, § 28).  Plaintiff then agrees to the

12  same broad release of liability and covenants not to sue Tufguy or UFP for any injuries, in

13  consideration for the opportunity to participate in the matches. (*See id.*, Ex. B, at 10–11, §§ 29–

14  30a).  The Tufguy Agreement releases Tufguy and UFP for liability for the negligence claim.

15         Third, the Waiver and Release is extremely broad and was intended to release all released

16  parties, including UFP and any affiliated entities or agencies, from liability of any kind arising

17  out of any personal injury to Plaintiff "arising out of or related to the events . . . ." (*See id.*, Ex. C,

18  at 1).  The Waiver and Release releases UFP from liability for the negligence claim.

19         Parties may agree to assume risk by contract, and, in Nevada, the issue of assumption of

20  the risk is a question for the court, not a jury. *Turner*, 180 P.3d at 1177 (holding that assumption

21  of the risk is a matter of law for the court, not a question of fact for the jury, because assumption

22  of the risk concerns the scope of a defendant's duty).  *Turner* expressly overruled a previous case

23  that had held that the issue of implied assumption of the risk (but not express assumption of the

24  risk) was subsumed by Nevada's comparative negligence statute and must be determined by a

25  jury. *See id.* at 1177 n.30 (citing *Mizushima v. Sunset Ranch, Inc.*, 737 P.2d 1158, 1161 n.7 (Nev.

1987)).  Since *Turner*, assumption of the risk is always treated as a question of law.

Defendants have met their initial burden on summary judgment to show that there is no genuine issue of material fact that they are not liable on Plaintiff's negligence claim.  Under the agreements, Plaintiff both assumed the risk of his alleged injuries and covenanted not to sue.  The burden now shifts to Plaintiff to adduce evidence showing a genuine issue of material fact as to liability.  In response, Plaintiff argues that because Defendant NUFIC breached its separate contract to insure Plaintiff, it is unconscionable for any Defendant to claim that it is released from liability.  NUFIC is not a moving party and has not joined the present motion.  Only the non-NUFIC Defendants have moved for summary judgment, and only on the negligence claim, which is not pled against NUFIC.

In Nevada, a court may find an agreement to be unenforceable if it was unconscionable when entered into:

> Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a . . . clause as unconscionable.  However, less evidence of substantive unconscionability is required in cases involving great procedural unconscionability.  A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract.  Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences.  As the Ninth Circuit has recognized, substantive unconscionability focuses on the one-sidedness of the contract terms.

*D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162–63 (Nev. 2004) (internal quotation marks and footnotes omitted) (alteration in original).

Plaintiff argues that the agreements were procedurally unconscionable, but he does not argue that the agreements were adhesive or that there was unequal bargaining power.  Rather,

Plaintiff somewhat confusingly argues that "Defendant [NUFIC?] . . . has not provided [Plaintiff's] consideration in the form of healthcare, so therefore is [sic] procedurally unconscionable to permit [D]efendant to oppress the Plaintiff['s] rights to seek redress from the Defendant's breach." (ECF No. 91 at 4:20–22). This is not an argument for procedural unconscionability. It is an argument that NUFIC has breached the contract to provide healthcare, so it cannot rely on the releases and waivers in the other three agreements. Plaintiff notes that Zuffa admits in its motion that claims for healthcare promised under the Zuffa Agreement are the only claims permitted under the Zuffa Agreement. (*See* ECF No. 87 at 9:16–19 (citing ECF No. 87, Ex. A, at 15, art. XVI § 16.3)). Zuffa indeed agreed to provide health insurance under Article XIII of the Zuffa Agreement, (*see id.*, Ex. A, at 13, art. XIII § 13.1), but Plaintiff does not allege that Zuffa breached its agreement to provide such insurance. Plaintiff alleges that NUFIC has breached the Policy, which is presumably an agreement between Zuffa and NUFIC, under which Plaintiff is the third-party beneficiary. In summary, this has nothing to do with procedural unconscionability of any of the releases of liability Plaintiff signed. And even if Zuffa could somehow be liable for NUFIC's alleged breach simply because it paid for Plaintiff's insurance policy without serving as the claims administrator--a fact that is not alleged--this would only potentially invalidate the release as to Zuffa, not as to Tufguy or UFP, who are covered by releases in separate agreements.

   Plaintiff also argues that the agreements were substantively unconscionable. Plaintiff admits that a disclaimer for liability for negligence is enforceable if not unconscionable. Plaintiff argues that the Zuffa Agreement--but not the others--is substantively unconscionable because it "does not allow for any remedy for Plaintiff should Defendant breach." But Plaintiff then quotes a portion of the agreement that in fact permits Plaintiff to seek redress for any breach of the agreement by Zuffa if Zuffa fails to cure the alleged breach within ten days. But again, none of the moving Defendants are moving to dismiss a breach of contract claim, and Plaintiff

has brought no such claim against the moving Defendants.  He has brought only a negligence

claim against these Defendants, and Plaintiff's ability to sue Zuffa for breach of contract does not

somehow render the waivers of liability for personal injuries nullities.  These waivers are

perfectly valid and enforceable as against the negligence claim.  If Plaintiff wishes to amend his

complaint to plead a breach of contract cause of action against Zuffa, Tufguy, and/or UFP

predicated on NUFIC's denial of benefits under the Policy, he may move to do so, although such

a claim seems implausible without an allegation that one or more of these Defendants was the

claims administrator.  But such allegations would still have nothing whatsoever to do with the

substantive fairness of the agreements containing the waivers against liability for personal injury.

Plaintiff has simply not made any argument indicating procedural or substantive

unconscionability of the Zuffa Agreement, Tufguy Agreement, or Waiver and Release at the

time they were entered into.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (ECF No.

87) is GRANTED.

DATED this 14th day of October, 2010.

_____
Gloria M. Navarro
United States District Judge